**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-23-00389-001-TUC-JCH (EJM) |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Leroy Witt, | |
| Defendant. | |

Before the Court are Defendant's Motion to Suppress (Doc. 73) and Magistrate Judge Markovich's Report and Recommendation ("R&R") (Doc. 115), which recommends denying Defendant's Motion. Defendant also filed a related "Appeal from Magistrate Determination" (Doc. 129), which seeks to challenge Judge Markovich's ruling on Defendant's third Motion to Compel or Dismiss Indictment.

The Court will adopt the R&R in large part and deny Defendant's Motion to Suppress because the arresting Border Patrol Agent Gonzalez had reasonable suspicion to initiate an investigatory stop. The Court will also affirm Judge Markovich's ruling on Defendant's Motion to Compel or Dismiss Indictment.

**I.   Background**

Defendant moves to suppress evidence obtained after Agent Gonzalez stopped the Chevrolet Sonic Defendant was driving. Doc. 73. Defendant's Motion was fully briefed, Docs. 76, 77, and Judge Markovich held a two-day evidentiary hearing related to them. *See* Doc. 101 (05/07/24 Hearing Transcript); Doc. 108 (05/20/24 Hearing Transcript). The R&R recommends this Court deny Defendant's Motion to Suppress because Agent

Gonzalez reasonably suspected criminal activity was afoot when he stopped the Sonic. Doc. 115. Defendant objects to the R&R's credibility determinations and its conclusion. *See* Doc. 126. The Government responded. Doc. 132.

Defendant also filed an "Appeal from Magistrate Determination." Doc. 129. Defendant's Appeal seeks to reverse Judge Markovich's denial of Defendant's motion to compel production of several documents allegedly referred to at the evidentiary hearings. *See id.*

## II. Legal Standards

### A. Report & Recommendation

A district court reviews de novo objected-to portions of an R&R. 28 U.S.C. § 636(b)(1).

### B. Investigatory Stops

Law enforcement "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlaw*, 528 U.S. 119, 123 (2000) (citation omitted). An officer's suspicion is reasonable if, under the totality of the circumstances, it has a "particularized and objective basis." *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted). The totality of the circumstances may include the following non-exhaustive list of factors: (1) the characteristics of the area in which a vehicle is stopped; (2) the proximity to the border; (3) usual traffic patterns on the particular road; (4) the officer's previous experience with alien traffic; (5) recent illegal border crossings in the area; (6) driving behavior; (7) aspects of the vehicle; and (8) the behavior or appearance of the driver. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975) (citations omitted).

### C. Non-dispositive Magistrate Orders

In the Ninth Circuit, non-dispositive magistrate orders are final. *See United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001). To the extent this Court need review them at all, it uses the highly deferential "clearly erroneous" or "contrary to law" standard of review. *See id.* at 967–69; *see also* 28 U.S.C. § 636(b)(1)(A).

III. Analysis

A. Motion to Suppress R&R (Doc. 115)

Agent Gonzalez provided ample reasons to suspect Defendant of criminal activity. First, the context. Agent Gonzalez was near the border in an area he knew well. *See, e.g.*, Doc. 101 at 8–17, 26. Agent Gonzalez also knew that smugglers in the area frequently take indirect routes to avoid Border Patrol checkpoints. *Id.* at 17. And he knew that one such route was reaching Tucson by way of SR-82 to SR-80 to I-10, which had no active Border Patrol checkpoints at the time, rather than taking I-19 or SR-80 to SR-83, which did. *See id.* at 13–17.

In that context, Agent Gonzalez noticed a Sonic he had never seen before traveling east on SR-82 from the border. *See* Doc. 101 at 19, 20–21. He noticed the Sonic in part because it had very dark tinting on its back windows but little tinting on its front windows. *Id.* at 23. Agent Gonzalez ran a Mobile Query, which stated that the Sonic was registered to a woman in Tucson. *Id.* at 27. The Mobile Query further indicated that the Sonic had travelled northbound through a temporarily closed checkpoint on SR-80 three times in the previous week. *Id.* at 16–17. Agent Gonzalez found it suspicious that a vehicle presumably going to Tucson would travel north on SR-80, because that route would add an hour and a half or more compared with more direct routes like I-19. *Id.* at 14, 32. The Mobile Query also returned a TECS alert for the Sonic stating: "Vehicle is being used to transport illegal aliens from Nogales into the interior of the United States." Doc. 101 at 36, 75. At roughly the same time, Agent Gonzalez observed the Sonic pass the SR-83 turnoff, which provides another, more direct route to Tucson. *See id.* at 39. Agent Gonzalez began to follow the Sonic. *Id* at 36, 75, 79. As he followed, Agent Gonzalez contacted dispatch to rerun the Sonic's plates. *Id.* at 36–37. Dispatch notified Agent Gonzalez that the Sonic had been spotted in Casa Grande earlier that day, which suggested the Sonic was on a "typical smuggling route" with which he was personally familiar. *Id.* at 38–39. Agent Gonzalez also observed the Sonic weaving between the lines and fluctuating its speed between 40MPH and 45MPH after the speed limit changed to 65MPH. *Id.* at 24–25, 80, 84. That confirmed to him that the driver was not familiar with the area. *Id.* at 25. Based on his suspicion at

this point, Agent Gonzalez initiated a stop by turning on his emergency lights and siren. *Id.* at 39.

Considering that context and those facts, the Court has no difficulty concluding that Agent Gonzalez's suspicion was reasonable. Most of the factors above weigh in Agent Gonzalez's favor. The TECS alert is notable, but so are the reasonable inferences Agent Gonzalez drew based on the Sonic's path and the Mobile Query and dispatch information he received. And the Sonic's erratic driving and unusually low speed, together with the heavy tint on the rear windows, also support Agent Gonzalez's suspicion. The Court also agrees with the R&R's observation that whether the TECS alert was perfectly accurate is irrelevant. *See* Doc. 115 at 20–22. Had it been perfectly accurate—stating only that the Sonic was *suspected* of smuggling aliens—it still would support a reasonable suspicion. And Agent Eppley's testimony on his creation of the alert appears credible and honest. *See generally* Doc. 108 at 5–45. The Court also agrees that the exact time at which the Sonic was seen in Casa Grande is irrelevant. *See* Doc. 115 at 20 n. 2. Agent Gonzalez's inability to say where precisely he learned the 2:00 time does not impact his credibility, which is well established by his answers on direct and cross-examination. For those reasons and the others provided by the R&R, the Court fully agrees that Agent Gonzalez reasonably suspected that criminal activity was afoot when he initiated the stop.[1]

Defendant objects primarily to the R&R's credibility determinations. In Defendant's view, "the magistrate should have outright rejected [Agent Gonzales's testimony]" because it was not credible. *Id.* at 4–5. On de novo review, a district court may accept a magistrate's credibility determination of a witness. *United States v. Ridgway*, 300 F.3d 1153, 1156 (9th Cir. 2002). Accepting a magistrate's credibility determination without conducting a de novo evidentiary hearing does not violate due process. *United States v. Raddatz*, 447 U.S.

---

[1] The Court disagrees with the R&R only to the extent it relies on events after Agent Gonzalez initiated the stop. The stop began when Agent Gonzalez turned on the lights and siren. The fact that Defendant then behaved bizarrely—driving slowly for a quarter mile while trying to wave Agent Gonzalez past—and later dangerously—driving off with Agent Gonzalez hanging out the Sonic window—may have confirmed Agent Gonzalez's suspicion but cannot support it.

667, 680 (1980).

After a careful review of the hearing transcripts, the Court disagrees with Defendant's assessment. Agent Gonzales's answers were direct and clear. They were not evasive or misleading. When confronted with shortcomings in his report and testimony, he readily acknowledged them. *See, e.g.*, Doc. 101 at 46–51. And contrary to Defendant's assertions, Agent Gonzales's cross-examination did not undermine his credibility. For example, dark window tinting may be not unusual in Arizona (Doc. 126 at 12–13)—but the combination of maximal rear tinting and minimal front tinting could indicate the tinting was not meant primarily for heat reflection. Similarly, Agent Gonzales could be expected to know most of the vehicles in the small community where he worked daily (Doc. 126 at 13)—at least enough to know he hadn't seen a Sonic with heavy rear tinting in the area before. Overall, the Court agrees with the R&R's credibility determinations.

Defendant also objects that Agent Gonzalez's suspicion was based entirely on the TECS alert. Doc. 126 at 10–12. The Court also disagrees with this assessment. First, Defendant mischaracterizes Agent Gonzalez's testimony. He did not say that the TECS alert was the only reason he began following the Sonic. Second, and as discussed above, many aspects of Agent Gonzalez's encounter justified his suspicion. The TECS alert was one factor, but so was the Sonic's route, history, and behavior in context of Agent Gonzalez's familiarity with the area and common alien smuggling tactics.

Thus, the Court will adopt the R&R in large part because Agent Gonzalez provided objective and particularized reasons to initiate the stop.

**B. Appeal from Magistrate Judge Determination (Doc. 129)**

Defendant also filed a related "Appeal from Magistrate Judge Determination" (Doc. 129) seeking to reverse Judge Markovich's Order (Doc. 113) denying Defendant's Motion to Compel or Dismiss Indictment (Doc. 105). In his Motion to Compel, Defendant argued that the Government failed to provide (1) an email about the registered owner of the Sonic; (2) any document informing Agent Gonzalez of the time the Sonic was seen in Casa Grande; and (3) any documentation referred to by Agent Eppley regarding a "hit" on the vehicle spotted in Phoenix the day prior to his creation of the TECS alert. *See* Doc. 105

at 2.

The Court sees no error in Judge Markovich's disposition, nor is it contrary to law. The Court would also affirm under a de novo standard of review if that were appropriate. The Court agrees with Judge Markovich's assessment that (1) Agent Gonzalez's testimony is ambiguous about the existence of an email regarding the registered owner, (2) Agent Gonzalez's testimony is ambiguous about the existence of an email regarding the time the Sonic was seen in Casa Grande, and (3) the Phoenix "hit" for the Sonic would not be expected to be in the Government's possession. *See* Doc. 113 at 2. The Court adds that these documents could not aid Defendant because they are ultimately irrelevant to the motion to suppress and could not undermine Agent Gonzalez's or Eppley's credibility enough to make a difference.

For those reasons, the Court declines to modify Judge Markovich's Order (Doc. 113) denying Defendant's Motion to Compel or Dismiss Indictment.

## IV. Order

Accordingly,

**IT IS ORDERED OVERRULING** Defendant's Objection (Doc. 126).

**IT IS FURTHER ORDERED ADOPTING IN PART** the R&R (Doc. 115), consistent with this Order's reasoning and citations.

**IT IS FURTHER ORDERED DENYING** Defendant's Amended Motion to Suppress (Doc. 73).

**IT IS FURTHER ORDERED AFFIRMING** Judge Markovich's Order (Doc. 113) denying Defendant's Motion to Compel or Dismiss Indictment.

Dated this 27th day of June, 2024.

John C. Hinderaker
United States District Judge